Eileen T. Rohan
Law Offices of Eileen T. Rohan
441 East Allen Street
Hudson, New York 12534
518-828-0179 (ph)
518-828-2420 (fax)
917-974-3604 (cell)
rohanlaw@earthlink.net

*Attorneys for Defendant,*
*ANTEBI FOOTWEAR GROUP*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
PARIS HILTON ENTERTAINMENT, INC.,

                Plaintiff,

      -against-

ANTEBI FOOTWEAR GROUP, LLC and
DOES 1 through 20, inclusive,

                Defendants.
-------------------------------------------------------x

Case No.: 1:14-cv-2437(SAS)

**ANSWER WITH**
**COUNTERCLAIMS**

Defendant, ANTEBI FOOTWEAR GROUP, LLC, by and through its attorney,

Eileen T. Rohan, answers the Complaint as follows:

<u>Answering the "Nature of this Action"</u>

      1.      Denies each and every allegation contained in Paragraph "1" of the

Complaint. Defendant further avers and asserts that the narrative, as presented and

phrased, is false, unwarranted, procedurally improper and inflammatory.

      2.      Denies each and every allegation contained in Paragraph "2" of the

Complaint. Defendant further avers and asserts that the narrative, as presented and

phrased, is false, unwarranted, procedurally improper and inflammatory.

<u>Answering "The Parties"</u>

1

3.      Denies knowledge or information sufficient to form a belief as to the veracity of the allegation contained in paragraph "3" of the Complaint, except admits that Paris Hilton is a natural person who transacts business, including celebrity licensing arrangements, through "Paris Hilton Entertainment, Inc.," which corporation is believed to reside in the State of California.

4.      With respect to the allegations contained in paragraph "4" of the Complaint, defendant admits that it is a limited liability company duly organized and existing pursuant to the laws of the State of New York and registered in the State of Florida. Defendant denies that New York is currently its principal place of business, said principal place of business being Miami, Florida.

5.      Admits the allegations contained in paragraph "5" of the Complaint.

6.      Admits the allegations contained in paragraph "6" of the Complaint.

<u>Answering "Facts Common to All Claims"</u>

7.      Admits the allegations contained in paragraph "7" of the Complaint.

8.      Denies each and every allegation contained in paragraph "8" of the Complaint, except admits that pursuant to both the North American Agreement and Worldwide Agreement, PHE was entitled to 8% of royalties on "Net Sales," with the exception of a limited number of sales upon which the royalty fee rose to 9.2%.

9.      Defendant denies the allegations contained in paragraph "9" of the Complaint, except admits that pursuant to Section 4.2 of the License Agreements, plaintiff was entitled to conduct an audit, that an audit was in fact conducted in 2012, and that the same period was re-audited in 2013.

10. Defendant denies each and every allegation contained in paragraph "10" of the Complaint.

<u>Answering "First Claim for Relief (Breach of Contract)</u>

11. Defendant repeats and reiterates each and every defense and statement contained in paragraphs "1" through "10," inclusive, with the same force and effect as if set forth at length herein.

12. Admits the allegations contained in paragraph "12" of the Complaint.

13. Denies each and every allegation contained in paragraph "13" of the Complaint, except admits that plaintiff performed its obligations under the contract prior to the calendar year 2013.

14. Denies each and every allegation contained in paragraph "14" of the Complaint.

15. Denies each and every allegation contained in paragraph "15" of the Complaint.

<u>Answering "Second Claim for Relief (Declaratory Relief)"</u>

16. Defendant repeats and reiterates each and every defense and statement contained in paragraphs "1" through "15," inclusive, with the same force and effect as if set forth at length herein.

17. Denies the allegations contained in paragraph "17" of the Complaint, except admits that the License Agreements afford plaintiff a right of termination for cause under limited circumstances, which circumstances are not present here.

18.    Admits the allegations contained in paragraph "18" of the Complaint, including that there is an actual dispute between the parties concerning plaintiff's allegation that it has the right to terminate the subject Licensing Agreements.

19.    Denies the allegations and request for relief contained in paragraph "19" of the Complaint, and further, submits that any judicial declaration by the Court must state that the termination was improper under the terms of the aforesaid Licensing Agreements.

Answering the "Third Claim for Relief (Accounting)"

20.    Defendant repeats and reiterates each and every defense and statement contained in paragraphs "1" through "19," inclusive, with the same force and effect as if set forth at length herein.

21.    Denies the allegations contained in paragraph "20" of the Complaint.

22.    Denies the allegations contained in paragraph "21" of the Complaint.

Answering the "Prayer for Relief"

23.    Defendant wholly and soundly denies that plaintiff is entitled to any of the relief requested in the Complaint.

As and For a First Affirmative Defense

24.    Plaintiff has failed to state a claim upon which relief may be granted.

As and For a Second Affirmative Defense

25.    The Complaint fails to comply with Fed. R. Civ. Proc. 8(a).

As and For a Third Affirmative Defense

26.    Plaintiffs claims are barred by the doctrines of waiver, estoppel, unclean hands and similar equitable defenses.

<u>As and For a Fourth Affirmative Defense</u>

27.    Plaintiffs claims are barred by the statute of frauds.

<u>As and For a Fifth Affirmative Defense</u>

28.    Plaintiffs claims are barred by the doctrines of payment and accord.

<u>As and For a Sixth Affirmative Defense</u>

29.    Plaintiffs have not set forth sufficient grounds upon which a judicial

accounting may be had under New York State law.

<u>As and For a Seventh Affirmative Defense</u>

30.    Plaintiffs claims are barred by documentary evidence.

<u>As and For an Eighth Affirmative Defense</u>

31.    That the Complaint fails to name certain necessary parties to this dispute,

including, but not limited to, Retouch Brands,  i.e., Retouch SL, Retouch Limited and

Retouch APS, and Michael Friis.


**<u>THE COUNTERCLAIMS</u>**

<u>As and For a First Counterclaim – Breach of Contract</u>

32.    Defendant repeats and reiterates each and every defense and statement

contained in paragraphs "1" through "31," inclusive, with the same force and effect as if

set forth at length herein.

33.    Defendant / plaintiff on the counterclaim ANTEBI FOOTWEAR GROUP,

LLC (hereafter "Antebi") asserts that plaintiff PARIS HILTON ENTERTAINMENT,

INC. <u>(hereafter "PHE")</u> has breached the Licensing Agreements referred to in the

complaint by willfully, unlawfully and without just cause (a) violating the effective

exclusivity provisions of the Agreements (denominated as a non-exclusive license with right of first refusal) by engaging in the licensure, promotion, distribution, marketing and sale of competing, non-Antebi footwear, including footwear bearing the name "Parisian Parc," to another entity that is an actual or apparent licensee and agent of PHE named Retouch Brands / Michael Friis; (b) failing to provide Antebi with a "right of first refusal" with respect to the competing Products, in violation of Section 2.1 of the Agreements; (c) withholding approvals from Antebi without cause so as to damage Antebi's business while allowing competing footwear to enter the market unchallenged and (d) making public statements distancing PHE and Ms. Hilton from Antebi while, at the same time declaring a (favorable) "obsession" with the infringing and competing products.

34.     The relationship between the parties was amicable from inception of the relationship in 2007 until the spring of 2013, and from inception of the relationship to present, Antebi has satisfied all of its obligations under the Agreements.

35.     On or about April 30, 2013 an agent of plaintiff Paris Hilton Entertainment, Inc., called Antebi and mentioned that PHE had "an apparel partner" that had "an interest in" shoes.

36.     For a period of four months thereafter, there was no contact between the parties, other than normal transactional dealings.

37.     On or about September 9, 2013 PHE's agent, The Beanstalk Group, stated in an email that it was interested in "clsw back" territory in which Antebi had an exclusive license to distribute footwear. Antebi did not agree to the claw-back.

38.     On September 10, 2013, plaintiff again reiterated its desire to "take back" territories in India and the Middle East. Again, Antebi did not agree to the claw-back.

39.     On or about September 10, 2013 through September 13, 2013 the parties engaged in discussions about a one-year extension of the contracts, culminating in a provisional agreement with respect to both an extension and a revised payment schedule. Pursuant to said revision, the payments were to be reduced in the event that an agreement was made by September 30, 2013. If an agreement was not reached by September 30, 2013, the reduced amount would be payable by December 15, 2013.

40.     On or about September 14, 2013 Antebi received a call from a concerned European distributor who advised defendant / plaintiff on the counterclaim of a promotional brochure and email invite from Retouch Brands referencing Paris Hilton handbags, accessories *and footwear*.

41.     Antebi confirmed that Retouch was marketing competing footwear in violation of the Licensing Agreements, and also learned that on September 15, 2013 Paris Hilton had tweeted: "Obsessed with all my new shoe designs. Love how all the fabrics & colors go perfectly with my [*link to Instagram photo of shoe*] bags." On September 16, 2013 Paris Hilton tweeted, "Had an extremely successful business trip to Milan. All the buyers loved my new 2014 collection of @PHpurses, accessories and shoe lines. #YES." These "Tweets" referred to products other than Antebi's (hereafter "competing products").

42.     Antebi advised plaintiff's agent, The Beanstalk Group, of the existence of the competing products and Paris Hilton's promotion of the competing products on

September 18, 2013. In the ensuing days, The Beanstalk Group indicated that it was concerned about the Retouch distribution and Hilton's connection therewith.

43.     On October 7, 2013 Antebi sent a breach letter to PHE, which resulted in a phone call the following day from PHE's Rick Hilton. In the interim, Beanstalk claimed that Paris "was misled" by Retouch.

44.     Instead of firmly distancing itself from Retouch's competing footwear, PHE attempted to broker a deal whereby Antebi would sell its exclusive license to Retouch for a below-market rate. Attempts by Antebi to resolve the dispute amicably broke down in November 2013, at which time Antebi submitted new designs for PHE approval.

45.      On November 27, 2013 PHE suspended the approval process without there having been any breach by Antebi, and in the absence of a breach letter. Said approval suspension was in violation of the Licensing Agreements. The excuse for same was that Antebi owed additional payments to PHE, despite the fact that a "no-breach" letter had been sent by Beanstalk to Antebi as late as August 12, 2013.

46.     PHE's suspension of the approval process constituted a breach of the Licensing Agreements.

47.     PHE's licensing, marketing, distribution and promotion of the competing Retouch footwear constituted a breach of the Licensing Agreements.

48.     Further, Antebi was entitled to a "right of first refusal" with respect to the competing designs, which right was not offered to Antebi in breach of the Agreements.

49.     From October 2013 through the present, PHE has willfully, falsely and with intent to breach, stated that Antebi "owes PHE" sums alternatively varying between

$148,000.00 and "millions of dollars." Said publication of these false and conflicting statements itself constitutes a breach by PHE of the Agreements between the parties.

50.     These breaches by PHE, as aforesaid, were occasioned solely and wholly by PHE, without any actions, breaches or defaults on the part of Antebi contributing thereto.

51.     As a result thereof, Antebi has been damaged, and is entitled to judgment on its counterclaim in an amount to be determined by a jury, but not less than $2,000,000.

As and For a Second Counterclaim – Breach of Implied
Covenants of Good Faith and Fair Dealing

52.      Defendant / plaintiff on the counterclaim repeats and reiterates each and every defense and statement contained in paragraphs "1" through "51," inclusive, with the same force and effect as if set forth at length herein.

53.     By virtue of the relationship between the parties herein, PHE was bound to Antebi by a covenant of good faith and fair dealing.

54.     Such covenants precluded PHE from acting in a manner of destroying or injuring Antebi's rights to receive the fruits of its relationship with PHE.

55.     PHE knew, and willfully disregarded, the fact that "Paris Hilton Shoes" was a profitable, and large, portion of Antebi's business.

56.     PHE breached its covenant of good faith and fair dealing to Antebi by means of its aforesaid intentional and malicious acts and by destroying and injuring Antebi's rights to receive the fruits of its relationship with PHE and those rights granted pursuant to the exclusive Licensing Agreements.

57.     Antebi has been damaged by PHE's actions and is entitled to recover against them in an amount to be determined by a jury at trial.

As and For a Third Counterclaim – Tortious Interference with Contract

58.      Defendant / plaintiff on the counterclaim repeats and reiterates each and every defense and statement contained in paragraphs "1" through "57," inclusive, with the same force and effect as if set forth at length herein.

59.      Antebi has valid contracts with PHE for the exclusive worldwide license to utilize the Property in connection with woman's footwear.

60.      Antebi has valid distribution contracts with its distributors that preclude such distributors from distributing competing products, including Retouch's.

61.      PHE had knowledge of these valid contracts.

62.      PHE willfully, intentionally and maliciously interfered with Antebi's valid contracts by working with Retouch Brands and Michael Friis to design, manufacture, source, market and promote the competing products.

63.      PHE willfully, intentionally and maliciously interfered with Antebi's valid contracts with its distributors by inducing them to breach or delay their contracts with Antebi and, in certain instances, refrain from entering into new contracts with Antebi.

64.      Antebi has been damaged as a result of PHE's intentional and malicious interference with its valid contracts and is entitled to recover damages, in an amount to be set by a jury upon the trial of this matter.

65.      PHE's actions were intentional, malicious and reckless, entitling Antebi to punitive damages in an amount to be determined at trial.

66.      By virtue of the aforesaid, plaintiff on the counterclaim is entitled to damages in an amount to be set by a jury upon the trial of this matter.

As and For a Fourth Counterclaim – Unjust Enrichment

67.     Defendant / plaintiff on the counterclaim repeats and reiterates each and every defense and statement contained in paragraphs "1" through "66," inclusive, with the same force and effect as if set forth at length herein.

68.     Antebi has paid approximately $2,000,000.00 in royalties to PHE in consideration for the exclusive license to the Property for the purposes of designing, manufacturing and sourcing of women's footwear.

69.     PHE has enjoyed the benefit of the royalties paid, and other benefits of the name and brand identification built on Antebi's hard work and good faith.

70.     Antebi had a reasonable expectation of consideration for the royalties paid and the efforts expended in building the business and marketing the products bearing the name of the Property. Antebi had a further reasonable expectation of loyalty through the expiration of the Licensing Agreements or any negotiated extensions thereto.

71.     PHE has intentionally and maliciously interfered with Antebi's reasonable expectation of consideration, and has unfairly capitalized on that expectation by creating confusion between the "Parc Parisian" shoe line and Antebi's licensed footwear.

72.     PHE has thus been unjustly enriched at plaintiff's expense and Antebi is entitled to recover against PHE in an amount to be determined at trial.

73.     The principles of equity and good conscience require restitution by PHE to Antebi, including, but certainly not limited to, disgorgement of any royalties that may have been obtained by PHE in connection with competing footwear lines.

74.     PHE's actions were intentional, malicious and reckless, entitling Antebi to punitive damages in an amount to be determined at trial.

75.     By virtue of the aforesaid, plaintiff on the counterclaim is entitled to damages in an amount to be set by a jury upon the trial of this matter.

As and For a Fifth Counterclaim – Unfair Competition

76.     Defendant / plaintiff on the counterclaim repeats and reiterates each and every defense and statement contained in paragraphs "1" through "75," inclusive, with the same force and effect as if set forth at length herein.

77.     PHE has misappropriated the Property which Antebi was entitled to utilize exclusively in connection with the design, manufacture and sourcing of women's footwear by virtue of its payment of considerable compensation.

78.     PHE misappropriated the Property in order to compete with Antebi's business, and to potentially acquire additional license royalties from other companies without waiting for the expiration of its Licensing Agreements with Antebi.

79.     Antebi has been damaged as a result of defendants' unfair competition and is entitled to recover against PHE in an amount to be determined at trial.

As and For a Sixth Counterclaim – Promissory Estoppel

80.     Defendant / plaintiff on the counterclaim repeats and reiterates each and every defense and statement contained in paragraphs "1" through "79," inclusive, with the same force and effect as if set forth at length herein.

81.     PHE made clear and unambiguous promises to Antebi to work with Antebi in good faith, which promises PHE failed to keep.

82.     Antebi reasonably and foreseeably relied upon such promises to its detriment.

83.     Antebi suffered damages as the result of its reasonable and foreseeable reliance on PHE's promises and is entitled to recover against them in an amount to be determined by a jury at trial.

<u>As and For a Sixth Counterclaim – for an Accounting</u>

84.     Defendant / plaintiff on the counterclaim repeats and reiterates each and every defense and statement contained in paragraphs "1" through "83," inclusive, with the same force and effect as if set forth at length herein.

85.     PHE is in exclusive control of all data concerning profits and/or royalties earned as a result of sales of competing footwear.

86.     Antebi is entitled to a judicial accounting of PHE's books, records, profits and royalties associated with all of its fashion / footwear lines, including "Parisian Parc," to which Antebi is entitled to disgorgement.

<u>As and For a Seventh Counterclaim – Defamation</u>

87.     Defendant / plaintiff on the counterclaim repeats and reiterates each and every defense and statement contained in paragraphs "1" through "86," inclusive, with the same force and effect as if set forth at length herein.

88.     Prior to PHE's breach in the spring of 2013, which breach continued thereafter, defendant / plaintiff on the counterclaim Antebi Footwear Group, LLC enjoyed an unblemished reputation in the fashion industry, and in April 2012 was nominated by the International Licensing Industry Merchandisers' Association as Best Celebrity Soft Goods Licensee of the Year.

89.     Prior to PHE's breach, Antebi's business relied on the continuous goodwill of the "Paris Hilton: The Shoe Collection" label and line, which goodwill Antebi worked long and voraciously to establish and generate.

90.     Prior to PHE's breach, Antebi established unparalleled goodwill with its distributors, vendors, merchants, retailers, factors and other business contacts.

91.     Prior to PHE's breach, Antebi earned substantial sums of money on its Paris Hilton shoe line, 8% of which sums were paid to PHE as royalties.

92.     Prior to PHE's breach, Antebi principal Joseph Antebi was noted to be a rising and accomplished part of the fashion licensure industry.

93.     With complete and utter disregard for the aforesaid goodwill and reputation of Antebi, PHE breached its contract with Antebi and has attempted to excuse its breach by the publication of false and malicious claims, including that Antebi "owes millions" in unpaid royalties to PHE and remitted less than half of the royalties owed.

94.     These statements are baseless, and belied by the contents of various documents, including the actual purchase orders, sales, invoices and production cost records, in addition to the records of royalty payments to PHE.

95.     PHE and its principal, Paris Hilton, are known to be actively engaged in self-promotion through social media and traditional media. Paris Hilton's Twitter feed has roughly ten million followers, and on that feed, Ms. Hilton described herself as a "Model, Actress, Singer, Brand, Business Woman, Fashion Designer, Author, Philanthropist and Empire." Ms. Hilton and PHE have employed the services of a variety of publicists and press release distribution networks, including prnewswire.com and MMDnewswire.com. With the filing of the Complaint, and the inflammatory language

therein, PHE had to know that its allegations alone would damage Antebi, while simultaneously giving free publicity to Ms. Hilton.

96.     PHE caused its false statements about Antebi to be published in media outlets around the world, including, but not limited to, the New York Daily News, New York Post, TMZ, PopCrush, WomensWearDaily (WWD), PRNewswire, Softpedia, In2EastAfrica, Ace Showbiz, The Fashion Law, Nepicity, 411 Mania, Sky 3 News, Celebrender, The Barrieexaminer, Woodstock Sentinel Review, Owen Sound Sun Times, Fort Mc Murray Today, St. Catherine's Standard, Brandt Ford Expositor, Timmins Press, Localsyr, Binghamton Homepage, Power 961, St Thomas Times Journal, Philly.com, The Toronto Sun, Style Bistro, Stratford Beacon Herald, Niagara Falls Review, Sault Star, Juicy Celeb, The Daily Herald Tribune, Fox News, My Twinties, Peter Borough Examiner, Hollywood.com, The Edmonton Examiner, Fort Erie Times,Melfort Journal, Portage Daily Graphics, AOL News, Yahoo! News, Meridian Booster, Informinny, Magic 93.7, Gossip Corner, Vancouver 24 hrs, *Star* Magazine, FindLaw, Hot 100 FM, WENN, WTVQ, RSS Pump, The Cragandcanyon, BBC News, Feel the Noise, Lexis Nexis, YouTube and perezhilton.com.

97.     The aforementioned publicity was calculated to, and did, harm Antebi's business, damaging Antebi's relationships with its other licensors, as well as wholesalers, manufacturers, distributors, retailers, others in the fashion industry and the general public.

98.     Antebi Footwear Group, Inc. has lost revenues and profits by virtue of said false statements.

99.     By virtue of said defamation by PHE, Antebi is entitled to damages in a sum to be determined by a jury upon the trial of this matter.

<u>Demand for Jury Upon the Counterclaims</u>

100.    Defendant / plaintiff on the counterclaim demands a trial by jury on all issues so triable.

**WHEREFORE,** Antebi Footwear Group, LLC demands Judgment:

(a)     Dismissing the Complaint herein, and awarding costs, disbursements and reasonable attorneys' fees to defendant thereon;

(b)     Compelling plaintiff to account to defendant for all profits and/or royalties earned by plaintiff by virtue of its actions to which defendant is entitled to disgorgement.

(c)     Awarding Damages as determined by a jury on each of the Counterclaims set forth herein, and for

(d)     Such other and further relief as the Court deems just, necessary and proper.

Dated: May 16, 2014

/s/

_____
Eileen T. Rohan (5623)
The Law Offices of Eileen T. Rohan
Attorneys for Defendant and Plaintiff on
the Counterclaims Antebi Footwear Group
441 East Allen Street
Hudson, New York 12534
518-828-0179 ph
518-828-2420 fax

917-974-3604 cell
rohanlaw@earthlink.net